In the Supreme Court of Georgia

Decided: October 5, 2015

S15A0784.  BERRIAN v. THE STATE.

BENHAM, Justice.

Following a jury trial, appellant Ronnie Lee Berrian was found guilty of malice murder and other offenses arising out of the shooting death of Russell Boyd.[1]  He appeals his convictions, and we affirm.

Appellant testified at trial that he was sitting on his front porch on the morning of the shooting when the victim drove his car into the front yard, parked, and walked up to the porch.  Appellant did not know the victim but came to understand that he was there to pick up Kevin Scott, who was the father

---

[1] The crimes occurred on October 10, 2012.  On January 2, 2013, a Richmond County grand jury returned an indictment charging appellant with malice murder, felony murder (aggravated assault), possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  Appellant was tried January 13-14, 2014, and the jury returned a verdicts of guilty on all charges.  The felony murder verdict was vacated as a matter of law and a judgment of nolle prosequi was entered with respect to the charge of possession of a firearm by a convicted felon.  The trial judge sentenced appellant to imprisonment for life without parole for the malice murder conviction, and imprisonment for a term of five years to serve consecutively for the possession conviction.  On January 22, 2014, appellant filed motion for new trial, and an amendment to the motion on June 14, 2014.  After a hearing, the trial court denied the motion for new trial as amended by order dated July 8, 2014.  Appellant filed a timely notice of appeal, and the case was docketed in this Court to the April 2015 term for a decision to be made on the briefs.

of appellant's girlfriend, with whom appellant lived.  Scott had arrived the previous day to stay with his daughter.  Appellant testified at trial and claimed that a fight erupted between the victim and him on the front porch after angry or challenging words were exchanged between them.  Appellant testified the victim pulled a knife on him and cornered him on the porch.  Appellant then ran into the house to retrieve a gun, which he placed in his pocket, and returned to the porch to stand at the screen door.  By that time, the victim and Scott were in the front yard and Scott asked appellant for his cigarette lighter.  Appellant claimed that when he stepped into the yard to hand Scott his lighter, the victim came at him from the bushes.  Appellant stated that he started backing away from the victim while the victim continued to come at him.  When appellant first attempted to fire his gun, it was on safety and did not fire.  According to appellant, he ran into the street to get away, and the victim chased him and continued to come at him with the knife.  When appellant released the safety setting from his gun, he turned and faced the victim and shot him.

Scott was an eyewitness to these events, and he testified and confirmed that appellant and the victim had engaged in an argument.  But Scott's testimony materially differed from that of the appellant.  According to Scott, even after the

argument commenced, the victim continued to help Scott, who was in a wheelchair, down the steps of the appellant's house so he could enter the victim's car. According to Scott, the victim had arrived at appellant's residence in order to transport Scott to a doctor's appointment. After Scott and the victim had reached the front yard of the residence, the victim challenged appellant about what he had in his pocket, in response to which appellant displayed a gun. The victim then declared he would "call 911." According to Scott, at that point appellant ran into the front yard and attempted to fire the first shot, but the gun misfired. The victim started to run down the street and, after appellant went back into the house to retrieve another gun, appellant ran out of the house and down the street after the victim. Scott testified that the victim stopped in the middle of the street and threw his hands up, after which appellant walked up and shot the victim in the chest. He did not see any weapon in the victim's hands, only a cell phone. According to Scott's testimony, the victim was not threatening the appellant. This eyewitness account was supported by physical evidence, such as the fact that two pocket knives were found in the victim's pockets, but the blades were not open. No other weapons were found. Appellant was arrested several hours later after he fled the scene of the crime in

an automobile.

1. Viewed in a light most favorable to the verdict, the evidence was sufficient to authorize the jury to find appellant guilty of malice murder and the other crimes for which he was convicted beyond a reasonable doubt, in satisfaction of the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Although appellant offered a version of events that conflicted with the testimony of eyewitness Scott, a jury is entitled to reject a defendant's version of events, and may judge his credibility and weigh his testimony against other evidence. See *Daniels v. State*, 280 Ga. 349, 350 (1) (628 SE2d 110) (2006). Furthermore, here the other evidence consisted not only of eyewitness testimony but also physical evidence regarding the fact that no knife was found, other than two unopen pocket knives found in the victim's pockets. Given the medical examiner's testimony that the bullet severed the victim's spinal cord and likely immediately paralyzed him from the neck down, it was reasonable for the jury to reject appellant's testimony that the victim was brandishing a knife before appellant fired the shot that killed him, particularly since no explanation was offered for how the victim's knives were placed back into his pockets. "Appellate courts . . . do not re-weigh evidence or determine

4

the credibility of witnesses on appeal, but rather appellate courts defer to the jury's findings." *Powell v. State*, 297 Ga. 352 (773 SE2d 762) (2015). Likewise, appellate courts do not resolve conflicts in testimony or evidence, as that is the function of the jury. See *Slaton v. State*, 296 Ga. 122, 124 (1) (765 SE2d 332) (2014).

2. During the charge conference, appellant's trial counsel requested a jury instruction on mutual combat, the trial court denied the request, and appellant's counsel objected to the trial court's ruling. Although trial counsel raised no objection to the trial court's failure to charge on mutual combat after the instructions were delivered, appellant asserts the trial court's failure to charge constitutes plain error that merits appellate review pursuant to OCGA § 17-8-58 (b) and *State v. Kelly*, 290 Ga. 29, 31 (1) (718 SE2d 232) (2011).

A finding that a defendant was engaged in mutual combat at the time the victim was killed may authorize the jury to find the defendant guilty of voluntary manslaughter and not malice murder. See *Sanders v. State*, 283 Ga. 372, 375 (2) (c) (659 SE2d 376) (2008). Citing *Carreker v. State,*[2] appellant asserts that because there was "some evidence from which a jury could have

---

[2] 273 Ga. 371 (2) (541 SE2d 364) (2001).

found both parties intended to resolve their differences by fighting each other with deadly weapons," the jury could have found he was engaged in mutual combat with the victim, and thus he was entitled to the requested instruction.

Appellant's own testimony, however, does not support a finding of mutual combat. From the evidence, it would be reasonable for a jury to conclude the altercation started with the appellant and the victim verbally taunting each other. According to appellant, the situation escalated into a physical assault when the victim threatened appellant by coming at him with a knife and cornering him on the porch. But appellant's testimony that he responded by going inside to retrieve a gun does not support a finding that the two men engaged in mutual combat. Instead, appellant described a scene wherein, by the time he reappeared at the door of the house with his gun in his pocket, the victim had stepped off the porch into the front yard with witness Scott. Appellant testified he stepped into the yard to hand Scott a cigarette lighter at Scott's request, not to pursue a fight with the victim. And when the victim started coming at him again, appellant backed away and attempted to flee. According to appellant, only when the victim continued to come at him did appellant attempt to fire his gun, eventually succeeding in doing so after the victim, a considerably older man,

6

chased him out into the street.

> The essential ingredient, mutual intent, in order to constitute mutual combat, must be a willingness, a readiness, and an intention on the part of both parties to fight. Reluctance, or fighting to repel an unprovoked attack, is self-defense, and is authorized by the law, and should not be confused with mutual combat.

*Mathis v. State*, 196 Ga. 288, 291 (1) (26 SE2d 606) (1943); see also *Weatherby v. State*, 213 Ga. 188, 193 (4) (97 SE2d 698) (1957) (where the defendant's testimony would have been sufficient to prove he killed the victim in self-defense and show a case of justifiable homicide, a voluntary manslaughter charge based on mutual combat "is neither required nor authorized"). The scenario described by appellant supports an instruction on self-defense, which the trial court gave, but not a mutual combat charge. Consequently, we reject appellant's assertion that he is entitled to a new trial because the trial court erred by failing to give a mutual combat charge to the jury.

Judgment affirmed. All the Justices concur.