In the Supreme Court of Georgia

Decided:   January 19, 2016

S15A1683.  WATSON v. THE STATE.

NAHMIAS, Justice.

Appellant Roosevelt Watson was convicted of malice murder and possession of a firearm during the commission of a crime for the shooting death of Quinton Brown.  Appellant contends only that the trial court committed plain error in failing to give the jury an instruction on mutual combat.  We affirm.[1]

1.    Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following.  On the night of June 8, 2010, Appellant went to the home of his uncle, Matt Cooper, who had friends over to watch an

---

[1] The victim was killed on June 8, 2010.  On July 6, 2010, Appellant was indicted for malice murder, aggravated assault with the intent to rob, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a crime.  Appellant's trial began on May 17, 2012, and the following day the jury found him guilty on all counts except aggravated assault with the intent to rob.  The trial court sentenced Appellant to serve life in prison for malice murder and five consecutive years for the firearm conviction; the aggravated assault with a deadly weapon verdict was merged into the murder conviction.  On June 1, 2012, Appellant filed a motion for new trial, which he amended with new counsel on November 14, 2013, and December 23, 2014.  After a hearing, the trial court denied the motion on April 10, 2015.  Appellant filed a timely notice of appeal, and the case was docketed in this Court for the September 2015 term and submitted for decision on the briefs.

NBA Finals game in a shed behind his house in Screven County. During the game, Appellant left the shed. About 20 minutes later, Cooper heard a loud "boom" and went outside, but he saw nothing and went back into the shed. About ten minutes later, Appellant returned to the shed. He left to spend the night with another uncle around 11:00 p.m. Before leaving, Appellant told Cooper that if someone came looking for him, Cooper should say that he had not seen Appellant that evening.

Brown's dead body was found the next morning lying in a ditch near the house of Cooper's neighbor. He had been killed by a single shot to his chest from a shotgun fired from about 12 to 15 feet away. A GBI agent interviewed Appellant later that day, and Appellant provided a written statement in which he claimed that he had not been at Cooper's house the previous night. Six days later, the agent questioned Appellant again. This time, Appellant admitted to being at Cooper's house and said that he heard the "boom," but claimed that he had not seen Brown that night. A week later, Appellant contacted the agent and said that he wanted to confess.

In his final interview, Appellant offered the following account of what transpired after he left Cooper's shed. He encountered Brown, who was a high

school acquaintance, and gave Brown a few dollars to purchase snacks from a neighbor. After taking the money, Brown said that he would rather smoke marijuana and refused to buy the snacks. Appellant then asked for his money back. When Brown refused, Appellant said he was going to get his shotgun and shoot Brown's car. Appellant walked away to retrieve his shotgun from a wooded area nearby. Once he had the gun, Appellant turned around and saw Brown approaching him. Appellant confronted Brown again about returning his money. Brown then rushed at Appellant in an attempt to take the shotgun, and Appellant fired a single shot, killing Brown. Appellant said that Brown was about 20 feet away when he pulled the trigger, and he admitted that Brown was unarmed.

At trial, the State presented Appellant's statements through the testimony of the GBI agent, along with other evidence. Appellant did not testify or present any evidence. The defense theory was that Appellant had acted in self-defense or, alternatively, that the shooting amounted to voluntary manslaughter rather than murder. The jury was charged generally on those issues but found Appellant guilty of, among other things, malice murder.

Appellant does not dispute the legal sufficiency of the evidence supporting

his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2.    Appellant's sole contention is that the trial court erred by failing to give a jury instruction on mutual combat with the victim, a theory that would have entitled the jury to find Appellant guilty of voluntary manslaughter rather than malice murder. See Berrian v. State, 297 Ga. 740, 742 (778 SE2d 165) (2015). As Appellant acknowledges, because he did not object on this ground at trial, his claim is reviewed on appeal only for plain error, "meaning that we will reverse the trial court only if the instructional error was not affirmatively waived . . . , was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public

4

reputation of judicial proceedings." Brown v. State, 297 Ga. 685, 691 (777 SE2d 466) (2015) (citation and quotation marks omitted). See also OCGA § 17-8-58 (b); State v. Kelly, 290 Ga. 29, 32-33 (718 SE2d 232) (2011). Appellant's contention fails under this test.

To begin with, there was no evidence that Brown ever possessed a deadly weapon during his encounter with Appellant; indeed, Appellant admitted that Brown was unarmed. Although this Court has recognized some inconsistency in the case law with regard to whether both alleged combatants are required to have deadly weapons in order for the jury to be charged on mutual combat, see White v. State, 287 Ga. 713, 723-724 (699 SE2d 291) (2010), there are numerous precedents holding that both combatants must be so armed. See, e.g., id. (citing four such cases); Joyner v. State, 208 Ga. 435, 439 (67 SE2d 221) (1951) ("Mutual combat exists where there is a fight with dangerous or deadly weapons, and when both parties are at fault and are mutually willing to fight because of a sudden quarrel."). The trial court did not commit plain error in making a decision on a jury instruction issue that was supported by those precedents. See Kelly, 290 Ga. at 34 ("Given that our case law runs contrary to appellant's position, it cannot be seriously contended that the trial court

committed 'clear or obvious' error.").

Moreover, even assuming that Brown did not need to be similarly armed to engage in mutual combat with the shotgun-wielding Appellant, there was simply no evidence that Brown had the mutual intent to engage in a physical fight with Appellant. See Berrian, 297 Ga. at 743 ("'The essential ingredient, mutual intent, in order to constitute mutual combat, must be a willingness, a readiness, and an intention on the part of both parties to fight.'" (citation omitted)). Appellant points to testimony from a crime scene investigator that gravel found inside Brown's shoe and on his leg could be indicative of a struggle, but even if a struggle occurred, that would not in itself establish the requisite mutual intent, because by Appellant's own account, Brown's only intention was to stop Appellant from using his shotgun.[2] Thus, according to Appellant, although he and Brown argued about the money Appellant wanted back, Brown never said that he wanted to fight, and Brown rushed toward Appellant to try to take away the shotgun that Appellant had retrieved after threatening to shoot at Brown's car. See id. ("'Reluctance, or fighting to repel

_____

[2] We note that there was no other evidence even suggesting a scuffle. To the contrary, Appellant admitted pulling the trigger while Brown was 20 feet away, and the medical examiner confirmed that Brown was shot from a range of about 12-15 feet.

an unprovoked attack, is self-defense, . . . and should not be confused with mutual combat.'" (citation omitted)).  Accordingly, the trial court did not err, much less plainly err, in failing to give a mutual combat instruction.

Judgment affirmed.  All the Justices concur.