307 Ga. 550
FINAL COPY

S19A1504.  RAMIREZ v. THE STATE.

WARREN, Justice.

Juan Carlos Ramirez was convicted of felony murder and other crimes in connection with the shooting death of Justin Acevedo.[1]  On appeal, Ramirez contends that his trial counsel rendered constitutionally ineffective assistance by withdrawing a request to instruct the jury on mutual combat.  We disagree and affirm.

Viewed in the light most favorable to the jury's verdicts, the

---

[1] The crimes occurred on July 31, 2014.  On October 16, 2014, a DeKalb County grand jury indicted Ramirez for the malice murder of Acevedo (Count 1); felony murder predicated on the aggravated assault of Acevedo (Count 2); aggravated assault of Acevedo (Count 3); possession of marijuana with intent to distribute (Count 4); and possession of a firearm during the commission of a felony (Count 5).  At a trial held from June 14 to 17, 2016, the jury found Ramirez not guilty of malice murder but guilty of the remaining counts.  The trial court sentenced Ramirez to serve life in prison for felony murder, a concurrent ten-year sentence for possession of marijuana with intent to distribute, and five years consecutive for possession of a firearm during the commission of a felony.  The aggravated assault count merged for sentencing purposes.  Ramirez filed a timely motion for new trial on June 30, 2016, which was later amended through new counsel and, on April 17, 2019, denied (as amended) after a hearing.  On May 15, 2019, Ramirez filed a timely notice of appeal, and the case was docketed in this Court for the August 2019 term and submitted for a decision on the briefs.

evidence presented at trial showed the following. On July 31, 2014, Ileanna Martinez and Itzel Jimenez (Acevedo's girlfriend and also a friend of a Sandra Boyzo, a mutual acquaintance of both Martinez and Jimenez) exchanged a series of heated Facebook messages regarding a dispute between Martinez and Jimenez. At the center of the dispute was Martinez's alleged insult of Jimenez's friend Boyzo, and the result of these messages was that Jimenez planned to meet Martinez at Martinez's apartment to fight. Martinez was at Ramirez's apartment while Martinez and Jimenez sent the heated Facebook messages back and forth, and Ramirez told Martinez that he would accompany her to her apartment "because he didn't want nobody to jump [her]" in the anticipated fight. Meanwhile, Jimenez, her boyfriend Acevedo, and several of her friends (Boyzo, Aaliyah Contreras, and Wilfredo Otero), went to Martinez's apartment complex together.

When Ramirez and Martinez arrived at Martinez's apartment complex, they encountered the other group, whose members were standing on the opposite side of the street. At that point, Ramirez

told Martinez not to cross the street because the group was going to jump her, and Ramirez pulled Martinez behind him. Ramirez then brandished a gun. Jimenez, Boyzo, and Otero swiftly walked away, but Acevedo and Contreras remained, and Acevedo began arguing with Ramirez.

There are multiple accounts about what Acevedo said to Ramirez at that point. Contreras testified that Acevedo told Ramirez, "just put the gun down, it has nothing to do with you, it's just between her and her," (referring to Jimenez and Martinez) and an investigating officer testified that in an interview, Contreras told him that Acevedo also told Ramirez, "if you're gonna do it, just do it." Contreras testified that Acevedo said Ramirez "wasn't gonna shoot," and Otero similarly testified that Acevedo said to Ramirez, "you won't shoot." According to Martinez's trial testimony, Acevedo walked toward Martinez and Ramirez while shouting and then returned to his side of the street, at which point he told Ramirez, "do not pull that gun out if you're not going to use it." And in a statement to police, Ramirez said that "one of the guys said, I'll come

across the street and take that gun from you."

It is undisputed that in response to Acevedo's statement or statements, Ramirez fired, and the bullet struck Acevedo in the chest, killing him. Except for Contreras, who claimed that the gun was pointed "directly towards us" when Ramirez shot, the statements of the other witnesses were consistent that Ramirez was instead pointing the gun down toward the street when he fired, and that the bullet ricocheted up and struck Acevedo. The medical examiner also testified that "the appearance of the entrance gunshot wound on [Acevedo] plus the appearance of the bullet make me fairly confident that this bullet hit a hard surface prior to hitting the decedent." And the crime scene investigator also found a "defect" in the street, potentially caused by a bullet striking the pavement between where Ramirez and Acevedo had been standing. The distance between where Ramirez and Acevedo had been standing was about 50-55 feet.

After the shooting, Ramirez and Martinez fled, and Ramirez gave the gun to Martinez and told her to put it in his apartment.

4

When executing a search warrant on Ramirez's apartment, police found the gun hidden in a toilet tank, as well as marijuana and a digital scale, prompting Ramirez's admission that he sold marijuana to his friends. The GBI determined that the bullet recovered from Acevedo's body was fired from the gun found in Ramirez's apartment.

Ramirez does not contest the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's general practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Ramirez guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia,* 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

At trial, the jury was charged on justification, including self-defense, as well as voluntary and involuntary manslaughter. Ramirez contends, however, that his trial counsel was

5

constitutionally ineffective for withdrawing a request to charge the jury on mutual combat. For the reasons explained below, we disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U.S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation and punctuation omitted). To carry the burden of overcoming this presumption, a defendant "must show that no reasonable lawyer

6

would have done what his lawyer did, or would have failed to do what his lawyer did not." *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016). "In particular, 'decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.'" Id. (citation omitted). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U.S. at 694. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010). We conclude that Ramirez has failed to show that his trial counsel's withdrawal of his request to charge on mutual combat was deficient.

To authorize a jury instruction, there need only be slight evidence at trial supporting the theory of the charge. *State v. Newman*, 305 Ga. 792, 796-797 (827 SE2d 678) (2019). "'Mutual

7

combat occurs when there is combat between two persons as a result of a sudden quarrel or such circumstances as indicate a purpose, willingness, and intent on the part of both to engage mutually in a fight.'" *Carruth v. State*, 290 Ga. 342, 348 (721 SE2d 80) (2012) (quoting Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed. 2007), § 2.10.43) (if the jury "find[s] that there was a mutual intention on the part of both the deceased and the defendant to enter into a fight or mutual combat and that under these circumstances the defendant killed the deceased, then ordinarily such killing would be voluntary manslaughter" instead of murder)). And it is well settled that "decisions as to which jury charges will be requested and when they will be requested fall within the realm of trial tactics and strategy. They provide no grounds for a new trial unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." *State v. Mobley*, 296 Ga. 876, 881 (770 SE2d 1) (2015) (citation and punctuation omitted); see also *Herring v. State*, 277 Ga. 317, 320 (588 SE2d 711) (2003).

At the hearing on Ramirez's motion for new trial, Ramirez's

8

counsel agreed that "if the evidence supported mutual combat, [there would not] have been any reason to withdraw that charge." Ramirez contends that this testimony demonstrates that his trial counsel had no strategy for withdrawing his request to charge on mutual combat. But this contention is unavailing because, as discussed below, the evidence *did not* support a charge on mutual combat.

First, Ramirez argues that when he brought a gun to a proposed fistfight, Acevedo did not withdraw from the confrontation, but instead persisted in daring and taunting Ramirez — even threatening to seize Ramirez's gun by force — and that this communicated Acevedo's intent to engage in combat — an invitation that Ramirez accepted by firing his gun. We disagree. None of the evidence offered about Acevedo's comments to Ramirez before Ramirez shot Acevedo — "just put the gun down, it has nothing to do with you, it's just between her and her"; "if you're gonna do it, just do it"; "you won't shoot"; "do not pull that gun out if you're not going to use it"; and "I'll come across the street and take that gun

9

from you" — indicated that Ramirez and Acevedo were engaged in mutual combat. We have held that a mutual combat charge is not warranted when there is "no provocation other than the use of words, threats, menaces, or contemptuous gestures." *Tepanca v. State*, 297 Ga. 47, 48, 50 (771 SE2d 879) (2015) (citation and punctuation omitted) (evidence that unarmed victim repeatedly threatened to "kick [the defendant's] a\*\*" and walked toward defendant while appearing to reach for something in his own pocket did not entitle defendant to a mutual combat charge).[2] Similarly,

---

[2] Ramirez contends that the rule stated in *Tepanca* — that mutual combat does not apply where a victim provided "no provocation other than the use of words, threats, menaces, or contemptuous gestures" — is dicta and should no longer be the law because it originates from case law interpreting a former version of the voluntary manslaughter statute that included the express provision that "provocation by words, threats, menaces or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder," former Ga. Code Ann. § 26-1007, and this provision is no longer included in Georgia's voluntary manslaughter statute. See OCGA § 16-5-2. But we have already held that this long-standing rule, "while not made an express provision of [subsequent voluntary manslaughter statutes], remains a part of the current law of voluntary manslaughter." *Brooks v. State*, 249 Ga. 583, 586 (292 SE2d 694) (1982). And *Tepanca* makes clear that the rule applies in the specific context of mutual combat. See 297 Ga. at 50. In any event, even assuming for the sake of argument that we were to agree with Ramirez, that would not mean that Ramirez's counsel performed deficiently because "in making litigation decisions, there is no general duty on the part of defense counsel to anticipate changes in the law." *Rickman v. State*, 277 Ga. 277, 280 (587 SE2d 596) (2003) (citation and punctuation omitted).

10

evidence of arguing between a defendant and victim is not itself evidence of mutual combat. *Moore v. State*, 307 Ga. __, __ (__ SE2d __) (2019) (citing *Johnson v. State*, 300 Ga. 665, 669 (797 SE2d 903) (2017)); see also *Russell v. State*, 303 Ga. 478, 479, 481 (813 SE2d 380) (2018) (evidence that included defendant's statement to responding officer that "I had to shoot him [the victim], they [sic] were trying to fight me," was insufficient to warrant jury charge on mutual combat where there was evidence that the defendant and the victim had been "playfully shadowbox[ing] and wrestl[ing]" each other before the victim put the defendant in a "choke hold," which made the defendant angry). Accordingly, in *Barnes v. State*, we concluded that counsel was not deficient in failing to secure a charge on mutual combat because the evidence, which included the victim "calling to" the defendant and a physical altercation between them, "did not support instructing the jury on mutual combat." 305 Ga. 18, 21, n.2 (823 SE2d 302) (2019).

Second, there is no evidence—or even any contention—that Acevedo was armed with a weapon, let alone a deadly weapon,

11

during his encounter with Ramirez, and although

> this Court has recognized some inconsistency in the case law with regard to whether both alleged combatants are required to have deadly weapons in order for the jury to be charged on mutual combat . . . there are numerous precedents holding that both combatants must be so armed.

*Watson v. State*, 298 Ga. 348, 350 (782 SE2d 18) (2016) (citing *White v. State*, 287 Ga. 713, 723-724 (699 SE2d 291) (2010); *Joyner v. State*, 208 Ga. 435, 439 (67 SE2d 221) (1951)); see also *Mobley*, 296 Ga. at 879-880. In short, evidence that one person drew a gun on an unarmed person, and then shot the unarmed person in response to verbal taunts, generally cannot constitute evidence that the two people engaged in mutual combat. See, e.g., *Johnson*, 300 Ga. at 669 ("There is no evidence here that Johnson and the victim mutually agreed to fight, and evidence of an argument over money that turned violent is not sufficient to show mutual combat."); *Watson v. State*, 298 Ga. 348, 350 (782 SE2d 18) (2016) (mutual combat charge not warranted because "there was no evidence that Brown ever possessed a deadly weapon during his encounter with Appellant,"

12

and "according to Appellant, although he and Brown argued about the money Appellant wanted back, Brown never said that he wanted to fight, and Brown rushed toward Appellant to try to take away the shotgun that Appellant had retrieved").

Under these circumstances, Ramirez has failed to show any evidence warranting a charge of mutual combat. He therefore has failed to carry his burden of showing that his trial counsel's withdrawal of his request to charge on mutual combat was constitutionally deficient. See, e.g., *Bannister v. State*, 306 Ga. 289, 293-294 (830 SE2d 79) (2019) (trial counsel not ineffective in withdrawing request to charge on mutual combat because no evidence supported that charge); *Barnes*, 305 Ga. at 21 ("Trial counsel cannot be faulted for failing to request a jury charge that was not authorized by the evidence." (citation and punctuation omitted)). Ramirez's claim of ineffective assistance of counsel therefore fails.

*Judgment affirmed. All the Justices concur.*

13

DECIDED DECEMBER 23, 2019.
Murder. DeKalb Superior Court. Before Judge Johnson.
*Gerard B. Kleinrock*, for appellant.
*Sherry Boston, District Attorney, Emily K. Richardson, Lenny I. Krick, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S.*

*Lindemann, Assistant Attorney General*, for appellee.