297 Ga. 47
FINAL COPY

S15A0045. TEPANCA v. THE STATE.

MELTON, Justice.

Following a jury trial, Hugo M. Tepanca was found guilty of malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony, all with regard to the shooting death of Jose Sanchez-Vargas.[1] On appeal, Tepanca contends, among other things, that he has been subjected to mutually exclusive verdicts and that he received ineffective assistance from his first appellate counsel. For the reasons set forth below, we affirm.

---

[1] On May 5, 2008, Tepanca was indicted in Hall County for malice murder, felony murder predicated on aggravated assault, aggravated assault, and possession of a firearm during the commission of a felony. Following a jury trial, Tepanca was found guilty of all counts, and, on April 19, 2010, he was sentenced to life imprisonment for felony murder and five consecutive years for possession of a firearm. The trial court merged the verdicts for malice murder and aggravated assault for purposes of sentencing. On April 21, 2010, trial counsel filed a motion for new trial, but Tepanca obtained new counsel on June 23, 2010. The trial court denied the motion for new trial on March 26, 2012, and Tepanca filed a notice of appeal on April 20, 2012, amended on October 15, 2012. Once the record was transmitted to this Court, Tepanca's appeal was docketed to the January 2015 term and orally argued on January 5, 2015.

1. Viewed in the light most favorable to the verdict, the record shows that, in April 2008, Tepanca lived with Melissa Gonzalez-Clambron, with whom he had two children. Tepanca and Gonzalez-Clambron have never been married. Approximately six months before the birth of his second child, Tepanca began a secret sexual relationship with Alicia Hernandez; however, Hernandez told Tepanca prior to the murder that she wished to stop seeing him. Sanchez-Vargas often drove Hernandez and a number of her neighbors to work for a fee.

On April 20, 2008, at around 7:00 p.m., Sanchez-Vargas visited Hernandez to collect his driving fee. Sanchez-Vargas and Hernandez spoke outside her home, and Sanchez-Vargas remained in his truck. Tepanca, who was visiting the same complex with Gonzales-Clambron, saw this conversation taking place, approached Sanchez-Vargas's truck, and asked Sanchez-Vargas what he was doing there. Tepanca did not personally know Sanchez-Vargas, and he testified that, prior to that moment, he did not believe that Hernandez was sexually involved with anyone else. Sanchez-Vargas answered Tepanca that what he was doing was none of Tepanca's business. Angered, Tepanca pulled out a handgun and fired into the ground. Sanchez-Vargas was unarmed. Hernandez then told Sanchez-Vargas to leave, which he did. Following a brief

altercation with Gonzales-Clambron, Tepanca drove off in the same direction.

According to Tepanca, he and Sanchez-Vargas had contact at a traffic light a short distance away. Tepanca testified that Sanchez-Vargas threatened Tepanca that he would "kick his ass." When the light turned green, Tepanca decided to follow Sanchez-Vargas, and he tracked him all the way to his home. Tepanca testified repeatedly that, at the time that he decided to follow Sanchez-Vargas, he was not mad. Instead, Tepanca's stated intention was "to make things right." According to Tepanca, Sanchez-Vargas got out of his truck, and Tepanca asked him if they could work things out. Tepanca testified that Sanchez-Vargas repeated the threat to kick his ass, walked toward Tepanca, and appeared to reach for something in his pocket. Tepanca then shot Sanchez-Vargas six times, even while Sanchez-Vargas was attempting to run away. Tepanca admitted that he shot Sanchez-Vargas and that he never saw the victim with a gun.

These facts were sufficient to enable the jury to find Tepanca guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Tepanca contends that, during sentencing, the trial court erred by merging his conviction for malice murder into his conviction for felony murder.

When the jury returns guilty verdicts on both felony murder and malice murder charges in connection with the death of one person, it is the felony murder conviction, not the malice murder conviction that is "simply surplusage" (Biddy v. State, 253 Ga. 289 (2) (319 SE2d 842) (1984)), and stands vacated by operation of law. Wade v. State, 258 Ga. 324 (2) (368 SE2d 482) (1988). Since [Tepanca's] sentence of life imprisonment is appropriate for both felony murder and malice murder (OCGA § 16-5-1 (d)), appellant has suffered no harm from the trial court's action in vacating the malice murder conviction and retaining the felony murder conviction.

Williams v. State, 270 Ga. 125, 126-127 (4) (508 SE2d 415) (1998).

3. Tepanca contends that, because the jury found him guilty of malice murder but acquitted him of the lesser included offense of voluntary manslaughter, he received mutually exclusive verdicts which are void. Specifically, Tepanca argues that, by returning a guilty verdict on malice murder, the jury found that the State proved that Tepanca acted without provocation, but by returning a not guilty verdict regarding the charge of voluntary manslaughter, the jury necessarily found that the State failed to prove the lack of provocation beyond a reasonable doubt.

Verdicts are mutually exclusive "where a guilty verdict on one count logically excludes a finding of guilt on the other." Jackson v. State, 276 Ga. 408, 410 (2) (577 SE2d 570) (2003), citing United States v. Powell, 469 U. S. 57, 69, n. 8 (105 SC 471, 83 LE2d 461) (1984). Thus, the rule against mutually exclusive verdicts applies to multiple guilty verdicts which cannot be logically reconciled; the

4

rule is not implicated where, as here, verdicts of guilty and not guilty are returned. Dumas v. State, 266 Ga. 797 (2) (471 SE2d 508) (1996).

(Punctuation and emphasis omitted.) Shepherd v. State, 280 Ga. 245, 248 (1) (626 SE2d 96) (2006). What Tepanca is actually arguing is that his verdicts were inconsistent, not mutually exclusive. The inconsistent verdict rule, however, has been abolished in criminal cases for quite some time. See Milam v. State, 255 Ga. 560 (2) (341 SE2d 216) (1986). Therefore, Tepanca's argument ultimately lacks merit.

4. Tepanca contends that the trial court erred by failing to charge the jury that either adultery or sexual jealousy between non-married persons may serve as provocation for voluntary manslaughter. We disagree.

A requested "jury instruction must be adjusted to the evidence and embody a correct, applicable, and complete statement of law." (Citations and punctuation omitted.) Roper v. State, 281 Ga. 878, 880 (644 SE2d 120) (2007). Under this standard, a jury instruction regarding provocation formed by either adultery or sexual jealousy was unwarranted. According to the facts of this case, there was no adultery at all. "A married person commits the offense of adultery when he voluntarily has sexual intercourse with a person other than his

5

spouse[.]" OCGA § 16-6-19. In this case, none of the parties were married; therefore, no instruction regarding adultery as a provocation for voluntary manslaughter was warranted. Likewise, the evidence indicated that Tepanca was not provoked by sexual jealousy at the time he shot Sanchez-Vargas. Tepanca testified that, at the time of the shooting, he was not mad at Sanchez-Vargas and, instead, he was only trying to talk peacefully with him. He further testified that he shot at Sanchez-Vargas because he was afraid that Sanchez-Vargas could have been reaching for a weapon. As a result, under Tepanca's own version of the facts, the instruction on sexual jealousy would have been improper. In any event, Tepanca's sexual jealousy was based wholly on supposition, and, even if Hernandez had told him that she had gone out with Sanchez-Vargas, it would not be "sufficient to excite sudden, violent, and irresistible passion in a reasonable person, OCGA § 16-5-2." Mayweather v. State, 254 Ga. 660, 661 (3) (333 SE2d 597) (1985).

5. Tepanca contends that the trial court erred by denying his request to charge the jury regarding the law of mutual combat as a basis for finding Tepanca committed only voluntary manslaughter. As discussed above, however, Tepanca's own testimony was that he did not want to fight Sanchez-Vargas. So,

6

even if there were evidence that Sanchez-Vargas wanted to fight, there is no evidence that Tepanca wanted to fight also. As such, "the evidence did not warrant such instructions since [Tepanca] testified he acted in self-defense in the fight and did not intend to kill the victim." Ruffin v. State, 296 Ga. 262, 264 (2) (a) (765 SE2d 913) (2014). Moreover, "[t]he unlawful killing of one who has given the slayer no provocation other than the use of words, threats, menaces, or contemptuous gestures, can not, in this State, be graded to voluntary manslaughter, under the doctrine of mutual combat." (Citation and punctuation omitted.) Joyner v. State, 208 Ga. 435, 440 (4) (67 SE2d 221) (1951). Under either of these precepts, the trial court did not err by refusing to charge the jury regarding mutual combat.

6. Tepanca contends that he received ineffective assistance because his first appellate counsel abandoned his case after being appointed. Specifically, Tepanca complains that first appellate counsel failed to file an amended motion for new trial or submit any argument or evidence in support of the existing motion filed by trial counsel. In addition, appellate counsel waived a hearing on the motion for new trial, and Tepanca maintains that appellate counsel delayed this appeal by failing to ensure the timely transmittal of the record. Tepanca

7

argues that, pursuant to <u>United States v. Cronic</u>, 466 U. S. 648 (104 SCt 2039, 80 LE2d 657) (1984), prejudice must be presumed in his case due to a constructive denial of counsel. However,

> for the <u>Cronic</u> "constructive denial of counsel" exception to apply, the "attorney's failure must be complete and must occur throughout the proceeding and not merely at specific points." <u>Turpin v. Curtis</u>, 278 Ga. 698, 699 (606 SE2d 244) (2004). [Tepanca's] assertion that his [appellate counsel abandoned him at the motion for new trial stage] does not meet this stringent standard. We therefore evaluate [Tepanca's] ineffective assistance claims under the usual <u>Strickland v. Washington</u>, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)] deficient performance and resulting prejudice test.

(Citation and punctuation omitted.) <u>Charleston v. State</u>, 292 Ga. 678, 682-683 (4) (a) (743 SE2d 1) (2013).

In this case, it must be noted that ineffective assistance of counsel is being raised for the first time. Where a claim of ineffective assistance of counsel has properly been raised for the first time on appeal, this court has explained that

> claims of ineffective assistance of appellate counsel which are premised on other claims that are not procedurally barred may be raised on appeal by new appellate counsel. [Cit.] Assuming that Appellant's claim of ineffective [first] appellate counsel is properly raised because it is premised on a claim not procedurally barred, a remand to the trial court for an evidentiary hearing would be necessary unless we can "determine from the record that the two-prong test for ineffectiveness cannot be met. [Cits.]" [Cit.]

Rogers v. State, 290 Ga. 401, 409 (5) (721 SE2d 864) (2012), overruled on other grounds by State v. Sims, 296 Ga. 465 (\_\_\_ SE2d \_\_\_) (2015). Here, however, Tepanca has made no specific claims as to how appellate counsel was ineffective. Instead, he generally argues that appellate counsel should have filed an amended motion for new trial, but he gives this Court no indication of what might have been raised in that motion. In essence, he leaves this Court to engage in a guessing game as to how appellate counsel's representation, or rather lack thereof, might have amounted to ineffective assistance. Under these circumstances, Tepanca has failed to show even a possibility of ineffective assistance, and there is no need for a hearing on remand.

Judgment affirmed. All the Justices concur.

Decided April 20, 2015 – Reconsideration denied May 11, 2015.

Murder. Hall Superior Court. Before Judge Gosselin.

Howard W. Anderson III, for appellant.

Lee Darragh, District Attorney, Lindsay H. Burton, William C. Akins, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant

Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.