303 Ga. 478
FINAL COPY

S18A0091.  RUSSELL v. THE STATE.

BENHAM, Justice.

Appellant Jermorris Russell seeks appellate review of his convictions for the shooting death of Quintavian Johnson and the aggravated assault of Dayveian Gibson.[1]

1.  Viewed in a light most favorable to sustaining the jury's verdicts of guilty, the evidence shows as follows.  At the time of the incident in question,

---

[1]     The crimes occurred on August 9, 2013.  A Newton County grand jury indicted appellant on charges of malice murder, felony murder, aggravated assault (Johnson), aggravated assault (Gibson), possession of a firearm during the commission of a felony (Johnson), possession of a firearm during the commission of a felony (Gibson), and possession of a pistol by a minor.  After hearing evidence at the trial conducted January 26 to 29, 2015, the jury returned verdicts of guilty on all counts in the indictment.  On February 18, 2015, the trial court sentenced appellant to life in prison for malice murder, 20 years in prison for aggravated assault (Gibson) to be served consecutively to the life sentence, five years imprisonment for each count of possession of a firearm during the commission of a felony to be served consecutively to the life sentence, and 12 months imprisonment for possession of a pistol by a minor.  The trial court purported to merge the felony murder count into the malice murder count, but in fact the count of felony murder was vacated as a matter of law.  The count of aggravated assault (Johnson) merged into the malice murder count.  On February 23, 2015, appellant moved for a new trial and amended the motion on April 6, 2017.  The trial court denied appellant's motion for new trial on July 3, 2017.  Appellant filed a notice of appeal on July 10, 2017.  Upon receipt of the record from the trial court, the case was docketed to the term of this Court beginning in December 2017 and submitted for a decision to be made on the briefs.

appellant was 16 years old. On the night of August 9, 2013, appellant and his friends Johnson and Gibson were hanging out outside some apartment homes of the Newton County Housing Authority. Witnesses testified that appellant and Johnson were shadowboxing each other and wrestling playfully. The play paused briefly so that appellant could remove his 9 mm Glock handgun that he had been carrying somewhere on his person. Appellant gave the gun to Gibson, who testified he held the gun to his side while watching appellant and Johnson resume their play fight. At some point, Johnson placed appellant in some sort of "choke hold" and appellant became angry, although Gibson stated appellant managed to free himself from Johnson's hold. Noting that the playfulness of the situation had changed, Gibson put appellant's gun down on the sidewalk and placed himself between appellant and Johnson in an effort to deescalate the situation. Ignoring Gibson's pleas to calm down, appellant took a swing at Johnson, but missed. A few women who were watching from a nearby porch laughed. Johnson took a swing at appellant and punched him in the eye, causing appellant to fall to the ground. While on the ground, appellant retrieved his gun and stood back up pointing it at Johnson and Gibson, who had again placed himself between his two friends in an attempt to calm tensions down. Nevertheless, appellant fired his gun, shooting Gibson in the arm, and

fatally shooting Johnson, who witnesses testified was unarmed and tried to run away. The medical examiner testified Johnson suffered two gunshot wounds, one of which entered his upper right arm and traveled into his chest, piercing both lungs and his heart. The medical examiner also testified that, based on the trajectory of the fatal bullet, Johnson was not face-to-face with the shooter, but was turned away from the shooter. Since there was no soot in Johnson's wounds, the medical examiner opined Johnson was at least three feet away from the gun when shot. Appellant did not leave the scene, but called 911, and surrendered his gun to police when they arrived. Appellant told one responding officer that he shot Johnson because Johnson had hit him in the face. Appellant told another responding officer, "I had to shoot him, they were trying to fight me."

Appellant contends the evidence was insufficient to convict him because the State failed to show he had any intent to shoot and kill Johnson or harm Gibson. We disagree.

> [P]ursuant to OCGA § 16-5-1 (b), "[m]alice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." In a case involving implied malice, the state has the burden of proving beyond a reasonable doubt that no considerable provocation for the killing was present and that all the

circumstances of the killing show an abandoned or malignant heart.

Browder v. State, 294 Ga. 188 (1) (751 SE2d 354) (2013). Malice aforethought may be formed in an instant and there need not be a showing of any premeditation. See Wynn v. State, 272 Ga. 861 (1) (535 SE2d 758) (2000). In this case, appellant shot Johnson because he was angered when Johnson punched him in the face. Although appellant set forth a defense predicated on justification, the jury was free to reject such defense. See Browder v. State, supra, 294 Ga. at 190; Sifuentes v. State, 293 Ga. 441 (1) (746 SE2d 127) (2013). As to the conviction for aggravated assault against Gibson, the doctrine of transferred intent makes it irrelevant whether appellant intended to shoot Gibson or only Johnson. See Coe v. State, 293 Ga. 233 (1) (748 SE2d 824) (2013). See also Hendricks v. State, 290 Ga. 238 (1) (719 SE2d 466) (2011). The evidence was otherwise sufficient for a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2.  Appellant contends the trial court erred when it did not give his requested charge on mutual combat.  Our review of the transcript reveals appellant failed to object to the trial court's decision not to give the requested instruction during the charge conference and also failed to raise any objection after the trial court charged the jury.  Accordingly, we may only review the matter for plain error.  See OCGA § 17-8-58 (b).  In determining whether plain error exists, this Court has set forth the following test:

> First, there must be an error or defect—some sort of "[d]eviation from a legal rule"—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the [trial] court proceedings." Fourth and finally, if the above three prongs are satisfied, the [appellate court] has the discretion to remedy the error—discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

State v. Kelly, 290 Ga. 29 (2) (a) (718 SE2d 232) (2011).  The elements to establish plain error have not been met in this case because there was no error.

"Mutual combat occurs when there is combat between two persons as a result of a sudden quarrel or such circumstances as indicate a purpose, willingness, and intent on the part of both to engage mutually in a fight."

(Citation and punctuation omitted.) Carruth v. State, 290 Ga. 342 (6) (721 SE2d 80) (2012). Evidence of an ordinary scuffle or fight typically does not warrant a charge on mutual combat. See Donaldson v. State, 249 Ga. 186 (3) (289 SE2d 242) (1982) ("Mutual combat is not a mere fight or scuffle."). This Court has also held that when the defendant asserts he acted in self-defense during a fight and had no intent to kill, then an instruction on mutual combat is not warranted. See Tepanca v. State, 297 Ga. 47 (5) (771 SE2d 879) (2015). See also Pulley v. State, 291 Ga. 330 (3) (729 SE2d 338) (2012) (trial court did not err in failing to give charge on mutual combat where defendant testified he hit the victim with a television in order to protect himself after the victim had attacked him with a pair of scissors).[2]

In the case at bar, there is no evidence that Johnson and appellant mutually agreed to do anything but playfully shadowbox and wrestle each other. Unquestionably, the playful mood of the encounter changed when

---

[2] In some cases, we have held that a charge on mutual combat is warranted only if the combatants are armed with deadly weapons *and* mutually intended or agreed to fight. See Nelms v. State, 285 Ga. 718 (4) (b) (681 SE2d 141) (2009); Hudson v. State, 280 Ga. 123 (2) (623 SE2d 497) (2005); Holcomb v. State, 268 Ga. 100 (6) (485 SE2d 192) (1997); Martin v. State, 258 Ga. 300 (3) (368 SE2d 515) (1988). We have noted, however, that there is a conflict in our case law as to whether there must always be evidence that mutual combatants be armed with deadly weapons to charge on mutual combat. See White v. State, 287 Ga. 713 (4) (c) (699 SE2d 291) (2010). This case may be resolved without reconciling this particular conflict in our case law.

Johnson seemingly got the better of appellant by putting him in a "choke hold," which in turn made appellant angry, leading him to swing unsuccessfully at Johnson. After Johnson landed a punch to appellant's eye, there was no mutual agreement to continue fighting, playfully or otherwise. Instead, the evidence shows appellant pointed the gun at both Johnson and Gibson as Gibson stepped in between the two boys, urging them to calm down. The evidence also shows that, rather than engage further with appellant, Johnson, who was unarmed, turned away from appellant and ran as shots were fired. Moreover, just like the defendants in Tepanca v. State and Pulley v. State, supra, appellant has maintained he shot Johnson in self-defense and had no intent to kill him. In such factual circumstances, a charge on mutual combat was not warranted, and there is no plain error.

Judgment affirmed. All the Justices concur.

Decided April 16, 2018.

Murder. Newton Superior Court. Before Judge Ozburn.

<u>Teresa L. Doepke</u>, for appellant.

<u>Layla H. Zon, District Attorney, Candice L. Branche, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General</u>, for appellee.