307 Ga. 290
FINAL COPY

S19A1171. MOORE v. THE STATE.

PETERSON, Justice.

William Christopher Moore appeals his malice murder conviction for the strangling and beating death of his girlfriend, Mandi Kaiser.[1] He challenges the trial court's rulings on evidentiary matters, including allowing the State to introduce evidence of his prior violent acts toward another girlfriend. He also argues that the trial court erred by denying a request for a jury instruction on

---

[1] Kaiser was found dead in her apartment on February 18, 2015. On May 20, 2015, a Chatham County grand jury indicted Moore for malice murder, two counts of felony murder (predicated on aggravated battery and aggravated assault), aggravated battery–family violence, and aggravated assault–family violence. At a January 2017 trial, a jury found Moore guilty of malice murder and the two family violence counts. The trial court sentenced Moore to life without parole for malice murder and merged the family violence counts into malice murder. (Although the jury's verdict form did not reflect any verdicts on the felony murder counts, the trial court's final disposition order listed the disposition for those counts as "[n]ot [g]uilty.") On February 6, 2017, Moore filed a motion for new trial, which was amended by appellate counsel on November 30, 2018. The trial court denied the motion in an order entered on March 22, 2019. Moore filed a timely notice of appeal, and the case was docketed to this Court's August 2019 term and submitted for decision on the briefs.

mutual combat and by failing to grant a mistrial based on a comment by the prosecutor in closing argument. Moore also argues that his trial counsel was ineffective in matters related to the other acts evidence. We conclude that any error in admitting the other acts evidence was harmless given the strength of the State's case. Because Moore has not otherwise shown trial court error or deficient performance by counsel, we affirm.

Moore lived with Kaiser in a Chatham County apartment.[2] Both had health problems and abused drugs, and Moore had a peripherally inserted central catheter ("PICC line") in his arm. Speaking to Kaiser on the telephone on the evening of February 17, 2015, Kaiser's mother, Karen Collins, could hear Moore yelling in the background. Kaiser asked Collins to come pick her up but decided to stay when Collins arrived. One of Kaiser's younger daughters left with Collins, reporting that Moore "was acting crazy."

---

[2] Moore and Kaiser together were given two keys to the apartment. Although there was testimony at trial that Kaiser had given one of the keys to her adult daughter, who had "lost" the key, neither party suggests on appeal that any adult other than Moore, Kaiser, and their landlord had access to the apartment.

Kaiser's 18-year-old daughter, Breanna Hartlaub, and Hartlaub's husband arrived at Kaiser's apartment later that night to retrieve clothing for Kaiser's younger daughters. Moore screamed at Hartlaub, saying she was not supposed to be there. Kaiser responded affirmatively when Hartlaub asked her if Moore had "put his hands on" her. Kaiser indicated she would move out the following day, but declined to leave the apartment at that time. Collins again spoke with Kaiser on the telephone around 11:00 that night, and Kaiser told Collins that she would break up with Moore and move back in with Collins the following day.

The next day, Kaiser did not respond to phone calls and text messages from her family members, and she was found dead on the floor of her apartment. The front door was locked and there were no signs of forced entry. Kaiser had abrasions and bruising all over her body, multiple fractured ribs, and more than ten separate blunt force injuries to her scalp. Kaiser's injuries also included a bite mark; testing of the wound showed the presence of Moore's DNA, and a dental forensics expert testified that Moore made the bite

mark. A medical examiner testified that the cause of death was a combination of strangulation and blunt force injuries that could not be caused by improper CPR.

On February 20, 2015, Moore waived his rights under *Miranda*[3] and spoke with investigators in a recorded interview. In the interview, Moore maintained that Kaiser was alive when he left the apartment for the night on February 17. Moore claimed that they had fought over Moore selling Kaiser's prescription medication, with Kaiser trying to pull out Moore's PICC line and Moore merely pushing her. He claimed that after he left, he caught a bus from the mall and spent the night at a laundromat. Moore also reported that he tried to call the victim while he was on the bus and the following day. Surveillance video, cell phone records, and other evidence undermined Moore's claims about what he did after he left the apartment. Police observed only superficial scratches on Moore's body, and his PICC line was not damaged.

---

[3] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

Moore did not testify at the January 2017 trial. He put on a witness, Dustin Singletary, who testified that he observed the victim at her apartment on the evening of February 17 screaming and throwing papers, angry that Moore had sold her pills. Singletary observed no one other than Kaiser and Moore in the apartment.

Moore's counsel told the jury that it should find Moore guilty of voluntary manslaughter, rather than murder, acknowledging to the jury in closing that Moore may have grabbed Kaiser's throat but did so "in a moment of passion, and to defend himself[.]" Counsel also argued to the jury that it was possible that Kaiser's chest injuries were the result of Moore improperly attempting to perform CPR on her.

1. Although Moore does not challenge the sufficiency of the evidence, we have independently reviewed the record and conclude that the evidence presented at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crime for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560)

(1979).

2. Moore argues that the trial court erred by allowing the State to introduce evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)") regarding Moore's violent acts against an ex-girlfriend. We conclude that any error was harmless.

Before trial, the State gave notice pursuant to Rule 404 (b) that it intended to offer various evidence of other acts, including acts against Lisa Bedgood, for the purpose of proving Moore's intent and that he used violence to control his romantic partners. In a pre-trial order, the trial court ruled that various other acts against several ex-girlfriends would be admissible for the purpose of showing Moore's intent. At trial, however, the State sought to introduce only the other acts committed against Bedgood.

Bedgood testified at trial that in April 2014 she and Moore had a physical altercation in which he blocked her from exiting their hotel room. Bedgood also testified that in May 2014 Moore slapped her in the chest and bit her as she tried to get out of a vehicle. And she described an incident on an unspecified date in which Moore

6

tried to choke her.

> [A] party offering evidence under OCGA § 24-4-404 (b) must show three things: (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.

*Castillo-Velasquez v. State*, 305 Ga. 644, 646-647 (2) (827 SE2d 257) (2019) (citation and punctuation omitted). In its pre-trial order, the trial court found Moore's actions against Bedgood in the April 2014 and May 2014 incidents amounted to batteries that showed an intent to cause bodily harm to the victim, the same mental state as required for the pending aggravated battery charge alleged in Count 4 of the indictment.[4] That charge was based on an allegation that

---

[4] The trial court's pre-trial order did not address the choking incident. The defense objected to Bedgood testifying at trial about this incident on the basis of lack of notice, and the trial court handled the objection by giving the defense an opportunity to question her prior to her testimony. In denying the motion for new trial, the trial court found that Bedgood's testimony was generally admissible because, by virtue of Moore having requested a charge on voluntary manslaughter, Moore placed his intent at issue, such that "his use of violence in prior relationships was relevant and probative of intent under those circumstances." Moore does not appear to challenge admission of the evidence on lack of notice grounds on appeal, but, at any rate, any error in this regard was harmless for the reasons discussed below.

7

Moore "maliciously cause[d] bodily harm to" Kaiser "by rendering her chest . . . useless[.]" The trial court also found that there was sufficient proof to enable the jury to determine by a preponderance of the evidence that Moore committed the acts allegedly committed in April and May 2014 and that the probative value of those acts was not substantially outweighed by undue prejudice. The trial court instructed the jury to limit its consideration of the other acts evidence to whether the State had proven intent as to the aggravated battery charge.

Moore argues on appeal that "based on [the extent of Kaiser's injuries, his] intent was quite clear" and so the State had little need for Rule 404 (b) evidence to prove his intent. Thus, he argues, even if the evidence was relevant to an issue other than his character, the probative value of the Rule 404 (b) evidence was so minimal that it was substantially outweighed by unfair prejudice. Assuming that this argument was preserved,[5] we find that any error in admitting

---

[5] Moore argued before the trial court that none of the other acts evidenced an intent to kill, which he erroneously contended was the only relevant intent in his case.

the Rule 404 (b) evidence was harmless and thus does not merit

reversal.

> The new Evidence Code continues Georgia's existing harmless error doctrine for erroneous evidentiary rulings. See OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . ."). In determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so. The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict.

*Smith v. State*, 299 Ga. 424, 431-432 (2) (d) (788 SE2d 433) (2016)

(citations and punctuation omitted).[6] Here, the evidence against

Moore was overwhelming. The medical examiner testified

unequivocally that Kaiser's injuries were the result of blunt force

trauma and strangulation, detailing a host of injuries all over her

body. Kaiser was found dead in the apartment that she shared with

Moore and where she had been seen alone with him on the previous

---

[6] Moore conclusorily frames each of his enumerations of error, including this and others that amount to ordinary issues of evidence or jury instructions, as constitutional violations. But he cites no authority for the proposition that any of the alleged trial court errors also constituted violations of any particular provision of the United States Constitution or the Georgia Constitution.

evening. The front door was locked when Kaiser was found, and there was no sign of forced entry. DNA evidence supported the State's position that Moore inflicted Kaiser's injuries.

Moore's defense at trial was that he strangled Kaiser in a moment of passion or to defend himself after she attacked him physically. But the jury rejected that defense, and it is highly unlikely that it would have accepted that defense even in the absence of Bedgood's testimony. The jury heard evidence, through the testimony of Hartlaub, that Moore had been physically violent toward Kaiser some time before inflicting the injuries that killed her. The unrebutted physical evidence was that Moore had only superficial scratches on his body and his PICC line was undisturbed. The medical examiner gave unrebutted expert testimony that Kaiser had injuries all over her body and broken ribs that could not have been caused by improper CPR, thus undermining Moore's suggestion at trial that he merely grabbed Kaiser's throat and then tried to revive her. The jury had reason to be skeptical of Moore's theory of events offered at trial, given his statements to

investigators that were both at odds with that theory and contradicted by surveillance video, cell phone records, and other evidence. We conclude that it is highly probable that any error in admitting the other acts evidence did not contribute to the verdicts.[7] See *Williams v. State*, 302 Ga. 147, 153-155 (3) (805 SE2d 873) (2017) (any error in admission of other acts was harmless given overwhelming evidence against defendant).

3.    Moore next argues that the trial court erred by overruling his objection to the admission of 17 photographs associated with Kaiser's autopsy. We disagree.

At trial, Moore objected to the admission of the 17 photographs on the basis that they were duplicative and unnecessary and their probative value was outweighed by their prejudicial effect. This objection appears to have covered all of the post-incision autopsy photographs. Suggesting that prosecutors should simply "[p]ick their ten, fifteen best photos," Moore argued that the probative value

---

[7] Indeed, Moore's argument on appeal that admission of Bedgood's testimony was error rests on the premise that the extent and nature of Kaiser's injuries were themselves sufficient proof of his intent.

11

of the photos was low given that the defense was not going to be disputing the cause of death or that Kaiser was strangled, while the prejudicial effect was high given the graphic nature of the photographs. The trial court denied the motion on the basis that showing the photographs would assist the medical examiner in explaining his testimony.

OCGA § 24-4-403 ("Rule 403") provides:

> Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used only sparingly. *Castillo-Velasquez*, 305 Ga. at 649 (2). A trial court's decision to overrule an objection under Rule 403 is reviewed for an abuse of discretion. See id. at 649-650 (2).

Here, the photographs to which Moore objected certainly were "relevant to show the nature and location of the victim's injuries, which corroborated the State's evidence of the circumstances of the

12

killing." *Pike v. State*, 302 Ga. 795, 799-800 (3) (809 SE2d 756) (2018). The State bore the burden to prove all of the elements of all of the crimes charged.[8] And, in the light of the medical examiner's testimony that none of the photographs were duplicates that merely showed the same injury from different angles, the trial court was entitled to reject the defense argument that the photographs were so duplicative that their probative value was outweighed by their prejudicial effect. Moore has not shown an abuse of discretion in admission of the photographs.

4.    Moore argues that the trial court erred by refusing his request to charge the jury on mutual combat. We disagree.

"A finding that a defendant was engaged in mutual combat at the time the victim was killed may authorize the jury to find the defendant guilty of voluntary manslaughter and not malice murder." *Berrian v. State*, 297 Ga. 740, 742 (2) (778 SE2d 165)

---

[8] Moreover, although Moore, in arguing against admission of the photographs, purported to concede that Kaiser died as a result of strangulation, he ultimately did dispute the circumstances under which she died, arguing in closing that her chest injuries were the result of improper CPR.

(2015). "Mutual combat occurs when there is combat between two persons as a result of a sudden quarrel or such circumstances as indicate a purpose, willingness, and intent on the part of both to engage mutually in a fight." *Russell v. State*, 303 Ga. 478, 481 (2) (813 SE2d 380) (2018) (citation and punctuation omitted). Evidence that the victim attacked the defendant, such that would give rise to justification based on self-defense, is not a basis for an instruction on mutual combat. See *Pulley v. State*, 291 Ga. 330, 334 (3) (729 SE2d 338) (2012) (trial court did not err in failing to give charge on mutual combat where defendant testified he threw a television at the victim in order to protect himself after the victim had attacked him with a pair of scissors).[9]

Here, Moore requested an instruction on mutual combat on the basis that there was evidence that he and Kaiser had been arguing prior to her death, that she had tried to remove his PICC line, and

---

[9] In some cases, we have held that a mutual combat instruction is warranted only if both combatants are armed with deadly weapons, but there is some conflict in our case law on that point. See *Russell*, 303 Ga. at 481 (2) n.2. This case does not require us to resolve that conflict.

14

that both of them had received physical injuries. The trial court instructed the jury on voluntary manslaughter generally but denied the defense request for a charge on mutual combat, saying there was no evidence that Kaiser was willingly engaged in a fight with Moore at the time she was killed. This was not error. Evidence that Moore and Kaiser had argued is not itself evidence of mutual combat. *Johnson v. State*, 300 Ga. 665, 669 (4) (c) (797 SE2d 903) (2017) ("evidence of an argument over money that turned violent is not sufficient to show mutual combat"). And the meager evidence that Kaiser had physically attacked Moore in some way is evidence that might have given rise to a charge on self-defense, not a charge on mutual combat. See id. (no error in failing to charge on mutual combat notwithstanding evidence of scratches and blood on defendant and his statement that victim threw a bottle at him); see also *Venturino v. State*, 306 Ga. 391, 398 (3) (830 SE2d 110) (2019) (no error in refusing to charge on mutual combat where defendant's "own testimony — in which he claimed self-defense — contradicted

15

a theory of mutual combat").[10]

5. Moore next argues that the trial court erred by overruling defense counsel's objection to a portion of the State's closing argument. We disagree.

In his closing argument, defense counsel posited that, on the night of her death, Kaiser had attempted to remove Moore's PICC line while he was ingesting cocaine through it, trying to "chill." In his closing argument, the prosecutor questioned that suggestion, saying, "[c]ocaine is a stimulant," "not a drug you take when you just want to, you know, watch Netflix and chill." Defense counsel did not object to the prosecutor's closing at this point. The prosecutor continued on for several sentences, then said:

> [Defense counsel] comes in at the very end, and he offers to you that Mandi Kaiser tried to pull a PICC line from the defendant. He did this for a reason; okay? . . . Because with voluntary manslaughter, words alone is not enough. . . . He knows that.

At that point, defense counsel objected, saying it was "improper" for

---

[10] No jury instruction on self-defense was given, and Moore raises no enumeration of error regarding that.

16

the prosecutor to "say that I'm doing something sinister or wrong" in making a closing argument. The trial court did not rule on the objection explicitly, saying: "All right. Gentlemen, let's keep to the facts of the case and what the evidence shows or has shown."

On appeal, Moore argues that the trial court erred by implicitly overruling his objection, because the State accused trial counsel of acting improperly without any basis for doing so. But "a prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion[.]" *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012). Given that wide latitude, we find no abuse of the trial court's discretion.

Moore also argues that the prosecutor's reference to cocaine being a stimulant was improper because it referenced matters not in evidence. But he made no such objection at trial, merely objecting to another part of the prosecutor's argument on the basis that it suggested that defense counsel had done something improper. Moore's argument that the prosecutor's comment about the properties of cocaine improperly referenced matters not in evidence

17

thus is waived for appellate review. See *Gates v. State*, 298 Ga. 324, 328-329 (4) (781 SE2d 772) (2016) (plain error review unavailable for errors related to allegedly improper remarks made during closing argument).

6.     Finally, Moore argues that his trial counsel provided ineffective assistance by failing to move for a mistrial or otherwise object to (1) a comment by the prosecutor in his opening statement and (2) certain testimony by Bedgood. We disagree.

To prevail on a claim of ineffective assistance of counsel, Moore must show both that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "To establish deficient performance, an appellant must overcome the strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way" in the light of all of the circumstances. *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015) (citation and punctuation omitted). To establish

prejudice, an appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U. S. at 694. An appellant must prove both prongs of the *Strickland* test, and if he fails to prove one prong, we need not "examine the other prong." *Smith*, 296 Ga. at 733 (2) (citation and punctuation omitted). In reviewing either component of the inquiry, all factual findings by the trial court will be affirmed unless clearly erroneous. Id.

(a) Moore argues that trial counsel was ineffective in failing to move for a mistrial or otherwise object when the State told the jury during its opening statement that it would "hear from other female victims of Willie Moore" who have "been ruled admissible." Moore argues that trial counsel should have objected because the prosecutor's statement improperly "gave that evidence the judge's seal of approval." But "[t]he failure to make a meritless objection cannot serve as a ground for an ineffective assistance claim." *Young v. State*, 305 Ga. 92, 97 (5) (823 SE2d 774) (2019). And Moore has pointed to no basis on which counsel could have objected to the

19

remark successfully.

"It is well established that a prosecutor may set forth in her opening statement what she expects the evidence adduced by the State will show." *Wilson v. State*, 276 Ga. 674, 676 (2) (581 SE2d 534) (2003). And preliminary questions concerning the admissibility of evidence are to be determined by the trial court. See OCGA § 24-1-104. The prosecutor's reference to the trial court's pre-trial evidentiary ruling was accurate and noted the limited purpose for which the evidence would be used.

To be sure, the jury ultimately would be called on to decide whether Moore actually committed any other acts that the State introduced. See *Olds v. State*, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016). And "criminal intent is a question for the jury[.]" *Coe v. State*, 293 Ga. 233, 235 (1) (748 SE2d 824) (2013) (citation and punctuation omitted). But telling the jury that the trial court had determined the other acts evidence was "admissible" was not at odds with the jury's authority in those respects. See *Olds*, 299 Ga. at 70 (2) ("[E]vidence of other acts is *admissible* under Rule 404 (b) only to the extent that

20

the evidence is *sufficient* to permit a *jury* to conclude by a preponderance of the proof that the person with whom the evidence is concerned actually committed the other acts in question." (emphasis added)).

The cases cited by Moore on appeal generally involve remarks by the trial court or prosecutor as to specific questions ultimately to be resolved by the jury.[11] See *Freeman v. State*, 295 Ga. 820, 821-822 (2) (764 SE2d 390) (2014) (reversing murder conviction where trial court told the jury that the defendant's out-of-court statement was "freely and voluntarily given"); *Starr v. State*, 269 Ga. App. 466, 466-468 (1) (604 SE2d 297) (2004) (conviction reversed when the trial court gratuitously included in its charge to the jury language from the Child Hearsay Statute to the effect that the court found the child victim's statement had "sufficient indicia of reliability"), overruled on other grounds by *Hatley v. State*, 290 Ga. 480, 483 (1) (722 SE2d 67) (2012); *Spry v. State*, 156 Ga. App. 74, 76-77 (3) (274 SE2d 2)

---

[11] Cases about comments by the trial court, which are governed by OCGA § 17-8-57, are not germane to a question about the propriety of arguments by counsel.

(1980) (convictions for distribution of obscene material reversed where prosecutor said in presence of jury that a warrant was issued after "some judge made the decision on whether or not [magazine] was obscene"). Another case cited by Moore did not involve a remark about evidence at all. See *Luke v. State*, 236 Ga. App. 543, 544-546 (4) (512 SE2d 39) (1999) (conviction reversed after prosecutor told jury that defense argument was "crazy" because if the law actually supported the defense argument, the judge would have dismissed the case). Here, "the prosecutor simply restated the evidentiary ruling by the trial court[.]" *Koonce v. State*, 305 Ga. 671, 677 (2) (e) (827 SE2d 633) (2019). The prosecutor's remark contained no suggestion that the trial court had made any determination about the reliability or credibility of the evidence or whether Moore had actually committed the acts in question. We cannot say that the prosecutor's remark was so improper under our case law that defense counsel performed deficiently in failing to object.

(b)   Moore also argues that his trial counsel was ineffective in failing to move for a mistrial or otherwise object when Bedgood on

re-direct examination referenced prior incidents beyond those the trial court had determined were admissible. In particular, when the prosecutor asked why Bedgood did not call the police after Moore choked her, Bedgood responded: "Because it was the last time it happened. I had made five police reports on him. Nobody ever did anything. Guess who had to deal with his anger after I made the police report? I did." Moore notes on appeal that trial counsel had objected to Bedgood's testimony on direct examination that she had experienced "many" problems with Moore on the basis that this testimony implicated incidents beyond those ruled admissible by the trial court.[12] Counsel's failure to object to Bedgood's remarks allowed Bedgood to testify to those incidents, anyway, Moore argues.

In cross-examining Bedgood, defense counsel asked whether she had reported to police the incident in which he allegedly had choked her. This opened the door to the prosecutor's question on re-direct, which gave her the opportunity to explain why she hadn't

---

[12] At that point, the trial court admonished the prosecutor to "make sure she's complying."

reported the incident. See *Strother v. State*, 305 Ga. 838, 846 (4) (c) (828 SE2d 327) (2019) (although Rule 404 (b) "precludes the admission of extrinsic evidence to prove a defendant's character in order to show that he acted in accordance with that character, inadmissible extrinsic evidence is admissible on redirect examination as rebuttal evidence, when defense counsel has opened the door to such evidence during cross-examination" (citation and punctuation omitted)). And trial counsel testified at the motion for new trial hearing that although he "could" have objected, he did not do so because it was "pretty standard" to ask a domestic abuse victim why she did not call the police, and because objecting "sort of cuts the defense argument off at the path that she didn't call the police." Counsel's assessment that an objection would undermine his attempt to challenge Bedgood's credibility based on her failure to report the incident was not objectively unreasonable. Moore has not shown that the failure to object was deficient.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 4, 2019.

Murder. Chatham Superior Court. Before Judge Bass.

*Steven L. Sparger*, for appellant.

*Meg E. Heap, District Attorney, Jennifer L. Parker, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.