**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: September 16, 2025

S25A1237. MBUNGU v. THE STATE.

PETERSON, Chief Justice.

Jedidja Mbungu appeals his convictions for felony murder and possession of a firearm during the commission of a felony, stemming from the shooting death of De'Andre Jones.[1] Mbungu argues that the trial court erred by excluding evidence of an alleged prior difficulty between Mbungu and Jones and evidence that Jones was

---

[1] The crimes occurred on August 29, 2020. On June 1, 2021, a DeKalb County grand jury returned an indictment charging Mbungu with malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and possession of a firearm during the commission of a felony (Count 4). At an October 2023 trial, the jury found Mbungu not guilty of malice murder and guilty of the other counts. On October 30, 2023, the trial court sentenced Mbungu to life in prison for felony murder and to a five-year, consecutive, suspended sentence on the firearm count. The aggravated assault count merged. Mbungu filed a timely motion for new trial, which was amended in January 2025. Mbungu waived an evidentiary hearing on the motion, and the motion was denied in an order entered on March 19, 2025. Mbungu filed a timely notice of appeal. The appeal was docketed to this Court's August 2025 term and submitted for consideration on the briefs.

a member of a gang, and by failing to instruct the jury on combat by agreement and mistake of fact. We conclude that any claimed evidentiary error was harmless, and the trial court did not err in refusing to give the requested instructions. We affirm.

The evidence presented at trial was as follows.[2] Steve Hines testified that on August 29, 2020, he was working security at a Chevron gas station in DeKalb County, when Mbungu approached him. Mbungu motioned towards Jones, who was across the street in front of a Shell station, saying, "There that mother fu**er go right there," and "He don't have a gun." Hines saw Jones, accompanied by another man, walking toward the Chevron station from the Shell station, as Mbungu walked from the Chevron to the Shell. Hines saw Mbungu and Jones pass each other in the middle of the street, heard

---

[2] Because Mbungu does not raise a claim that the evidence to support his convictions was insufficient as a matter of constitutional due process, and because two of the enumerations that he does raise require us to consider the strength of the evidence in determining whether assumed evidentiary errors by the trial court were harmless, we review the record de novo, and we weigh the evidence as we expect reasonable jurors would have viewed it, rather than viewing it all in the light most favorable to the verdicts. See *Parker v. State*, 320 Ga. 572, 578 (2024).

Mbungu say, "Hey, mother fu\*\*er," [3] and then saw Mbungu shoot Jones. Hines saw Jones try to run away before collapsing. Hines did not see Jones or the man accompanying Jones with a gun that night, nor did he see anyone take any gun off Jones's person after he was shot. Hines testified that he observed Mbungu wearing a bullet-proof vest at the time of the shooting.

Izeonna Bigby, a teenager sitting in a car at one of the gas stations, testified for the defense that she saw Jones and Mbungu cross paths and begin arguing. Bigby testified that she saw Jones reach for something that she believed to be a gun right before he was shot, although she acknowledged that she did not see Jones with a gun and that Mbungu pulled his gun out first. Bigby testified that Mbungu shot Jones in the back.

Surveillance video from the Chevron captured the events surrounding the shooting, albeit without a direct view. The video appeared to show Mbungu briefly approach Hines at the Chevron

---

[3] On cross examination, Hines testified that it was possible that it was Jones who said that.

before turning back toward the Shell station, then shoot Jones as Jones was running away from Mbungu, the two moving from the Shell station toward the Chevron.

Mbungu fled the scene and surrendered several days later at the county jail. No gun was found on or near Jones's body. The medical examiner determined that Jones died of a gunshot wound to the back left side of his head.

Mbungu testified at trial that as he walked away from the Chevron, he heard Jones tell someone to give Jones a gun so that he could shoot Mbungu. He saw Jones get a gun from a car and walk towards Mbungu, saying, "What I told you about being here," and "I told you I was going to shoot you the next time I see you." Jones said, "Hey, motherfu**er," and Mbungu turned to see Jones brandishing the gun. Mbungu pulled a gun from his fanny pack and started shooting. Mbungu testified that he feared for his life and believed that Jones had a gun in his hand.[4] Mbungu denied wearing a bullet-

---

[4] On cross-examination, Mbungu agreed that Jones merely "attempted to get it out" and that Mbungu was able to get to his gun first.

proof vest.

In addition to evidence about the shooting of Jones, the jury heard about other previous encounters between Mbungu and Jones. Mbungu testified about an incident about a week to ten days before the shooting, in which Jones approached Mbungu and his friend, Carlos Delrio, outside of an automobile parts store, with a gun in his pants, and threatened to shoot them in the face. Delrio testified to the jury that during that incident he saw a gun in Jones's pocket and heard Jones say, "I shoot him in the face." Mbungu's brother, Gloire Mbungu, testified that, in October 2019, Gloire and Mbungu had an encounter with Jones at the Shell station in which Jones pulled out a gun and threatened to shoot both brothers. Mbungu referenced that incident with his brother in his testimony to the jury, saying his brother was mistaken about the timing and it had in fact taken place in 2020. Mbungu also testified before the jury that a friend told him that Jones had shot into an occupied house three times within a 24-hour period. Mbungu testified that his knowledge about Jones impacted his decision to shoot.

1.     Mbungu argues that the trial court made two evidentiary errors: (a) by excluding evidence of a different alleged prior difficulty between him and Jones; and (b) by excluding evidence that Jones was in a gang. We conclude that any error in excluding this evidence was harmless.

(a)     Before trial, Mbungu filed a notice of his intention to present intrinsic evidence and other acts evidence about Jones pursuant to OCGA § 24-4-404(b). The filing gave notice that Mbungu intended to present evidence that, among other things, about nine days prior to the shooting of Jones, Jones threatened Mbungu and his brother with an assault rifle, yelling at Mbungu not to "step on the blood of my people." Mbungu argued that the prior incidents were relevant to show his "state of mind and absence of mistake and absence of accident." See *Copeland v. State*, 316 Ga. 452, 458 (2023) ("Specific instances of a victim's past conduct may … be admitted, not to show the victim's action in conformity therewith, but rather establish the defendant's state of mind and the reasonableness of the defendant's use of force." (quotation marks omitted)). He also

6

argued that the prior acts were intrinsic. Before his testimony to the jury, Mbungu proffered that about nine days before the shooting, Jones called Mbungu over near the Shell station and asked him about a prior incident involving a friend of Mbungu. Later, at the Shell station, Mbungu proffered, Jones became angry and threatened Mbungu's friend Michael and another man. Mbungu in his proffer explained that Michael had stepped on some blood left on the floor of the Shell station when one of Jones's friends had been shot. Mbungu also proffered, "I seen [Jones] on numerous occasions with his gun. And the day of the Shell, the incident where it happened at the Shell, where he pulled out a gun on me and my brother, he had his gun on him that day." The trial court excluded evidence of the encounter involving the conversation near the Shell and the subsequent conversation involving Michael, saying it was "not a prior difficulty" because any threats were directed at Michael, not Mbungu, and no gun was involved.

"A trial court's decision whether to admit or exclude evidence is reviewed on appeal for an abuse of discretion." *Tarver v. State*, 319

Ga. 165, 169 (2024) (quotation marks omitted). But we will reverse a conviction based on a trial court's abuse of discretion in excluding evidence only if the exclusion was harmful. See id. (citing OCGA § 24-1-103(a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.")). "It is well settled that the test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Tarver*, 319 Ga. at 169–70 (quotation marks omitted).

Assuming without deciding that the exclusion of this proffered evidence was an abuse of discretion, we conclude that any such error was harmless. The jury did hear evidence of multiple incidents in which Jones had threatened violence more explicitly, including testimony by Mbungu, Mbungu's brother, and Mbungu's friend Delrio that Jones had threatened to shoot them, as well as evidence that Jones had shot into an occupied home. Thus, the excluded evidence was very similar to evidence that was admitted. And Mbungu's self-defense claim was weak. No witness other than

8

Mbungu testified to seeing Jones with a gun when he was shot, and no gun was found on or near him. Although Bigby testified that she saw Jones reach for something, she acknowledged that she did not actually see Jones with a gun and that Mbungu pulled out his gun first. Mbungu's own testimony was inconsistent as to whether he saw Jones pull out a gun. And the witness testimony, the medical examiner's testimony, and the video evidence supported an inference that Jones was running away from Mbungu when he was shot and that he was shot in the back. Thus, it is highly probable that the exclusion of the proffered incident did not contribute to the verdict. See *Tarver*, 319 Ga. at 171–73 (any error in exclusion of evidence about prior acts of the victim to show the defendant's state of mind when he shot the victim was harmless given that the excluded evidence was largely cumulative of admitted evidence and the defendant's self-defense claim was weak); *Henderson v. State*, 310 Ga. 708, 713–14 (2021) (any error in striking from the defendant's trial testimony reference to a statement the victim made to the defendant about having been to prison previously was

9

harmless in the light of admitted testimony about more explicit threats to the defendant made by the victim and an associate, and the strong evidence of the defendant's guilt); *Rowland v. State*, 306 Ga. 59, 66–67 (2019) (any error in exclusion of evidence that the victim had once solicited the defendant to kill the victim's son was harmless, given lack of clarity about the details of the incident, and other, stronger evidence that was admitted in support of the defendant's self-defense claim, as well as the strength of the evidence of the defendant's guilt).

(b) Also before trial, the State filed a motion in limine seeking to exclude evidence of Jones's bad character, including evidence of Jones's alleged gang membership, on the basis that Mbungu could prove a pertinent character trait only through reputation and opinion evidence. During arguments on the motion, the defense represented that Hines, the security guard, could testify about Jones's membership in a gang. The trial court ruled that Hines would not be permitted to testify as such, although Mbungu could call a gang expert to testify. The trial court later ruled that any

evidence of Jones's gang affiliation was not relevant, saying the court would not allow such evidence in the form of autopsy photos showing tattoos on Jones's face or testimony by Mbungu. Mbungu proffered that he knew Jones was in a gang, the basis for his knowledge, and how that knowledge played into his own actions in shooting Jones. Mbungu's counsel also proffered a law enforcement officer's testimony about gangs, but generally the witness resisted stating definitively that Jones was in a gang based on materials shown to him by defense counsel and proffered that Jones had never been identified as a gang member.

Again assuming without deciding that the trial court abused its discretion in excluding evidence of Jones's gang membership, we conclude that any such error was harmless, for reasons similar to those set forth in Division 1(a). Even assuming that evidence that Mbungu believed that Jones was in a gang was relevant to the reasonableness of Mbungu's actions, but see *Spivey v. Rocha*, 194 F3d 971, 977–78 (9th Cir. 1999) (whether the victims were gang members "was not probative to the question of whether they were

armed" on the day of the shooting), the jury heard other evidence that Jones had committed violent acts of which Mbungu was aware. And, again, Mbungu's self-defense claim was weak. Therefore, it is highly probable that the exclusion of evidence of Jones's alleged gang affiliation did not contribute to the verdict. See *Tarver*, 319 Ga. at 171–73; *Henderson*, 310 Ga. at 713–14; *Rowland*, 306 Ga. at 66–67.[5]

2.    Mbungu also argues that the trial court erred by refusing, over his objection, to charge the jury on mistake of fact and combat by agreement. We disagree.

(a)    "To authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge. Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law." *Venturino v. State*, 306 Ga. 391, 398

---

[5] Mbungu does not argue that the evidentiary errors we assume for purposes of analysis in this opinion cumulatively resulted in harm. See *State v. Lane*, 308 Ga. 10, 18 (2020) ("[E]ven in the evidentiary context, a defendant who wishes to take advantage of the [cumulative error rule] should explain to the reviewing court just how he was prejudiced by the cumulative effect of multiple errors."). And, for the reasons set forth above, we discern no apparent cumulative prejudice warranting reversal.

(2019) (quotation marks omitted).

Mbungu's argument that the trial court should have charged on mistake of fact is premised on his testimony that he mistakenly believed that Jones was in fact reaching for a gun when Mbungu shot him. Such a mistake would have justified the shooting, Mbungu posits. But this Court has made clear that "a mistake-of-fact instruction is not required, even upon request, if the 'mistake' or 'misapprehension' alleged by the defendant is the belief that the victim possessed a weapon or was about to use deadly force against the defendant, so long as the trial court fully instructs the jury on justification and self-defense, including analogous principles of justification and reasonable belief." *Redding v. State*, 311 Ga. 757, 759–60 (2021); see also *Winters v. State*, 303 Ga. 127, 133 (2018) ("[M]istake of fact is not separate from a self-defense argument where the asserted mistake concerned whether the victim was armed and the defendant's use of force was thus justified."). The only mistake of fact that Mbungu asserts was that he mistakenly believed that Jones had a gun, which supports his justification

13

defense. Here, the trial court fully charged the jury on justification and self-defense, including language instructing the jury that a defendant claiming self-defense must have a reasonable belief that his use of force was necessary. Therefore, Mbungu has not shown error in the trial court's refusal to charge on mistake of fact.

(b) As for Mbungu's argument that the trial court erred by refusing to charge on combat by agreement, mutual combat "occurs when there is combat between two persons as a result of a sudden quarrel or such circumstances as indicate a purpose, willingness, and intent on the part of both to engage mutually in a fight." *Venturino*, 306 Ga. at 398 (quotation marks omitted). See also *Carruth v. State*, 290 Ga. 342, 348 (2012) (noting use of the phrase "combat by agreement" in OCGA § 16-3-21(b)(3)). Mbungu argues that Bigby's testimony that Jones and Mbungu argued and that Jones might have pulled out a gun was slight evidence supporting a mutual combat charge. But evidence that Jones and Mbungu argued before Mbungu shot Jones is not sufficient to support a jury instruction on mutual combat. See *Williams v. State*, 309 Ga. 212,

217 (2020); *Moore v. State*, 307 Ga. 290, 296 (2019). And evidence that the victim threatened death or seriously bodily injury, such as by reaching for a weapon, although it may support a self-defense instruction, does not support an instruction on mutual combat. See *Williams*, 309 Ga. at 217–18; *Moore*, 307 Ga. at 296; *Venturino*, 306 Ga. at 398.

Mbungu cites *Carreker v. State*, 273 Ga. 371 (2001), in which we said that the trial court did not err in *giving* a mutual combat instruction where "[t]here was some evidence from which the jury could have found that both parties intended to resolve their differences by fighting each other with deadly weapons." Id. at 372. But a defendant's complaint about the giving of an instruction on mutual combat generally lacks merit, given that the instruction generally benefits a defendant. See *Sanders v. State*, 283 Ga. 372, 375 (2008). This case is about the *refusal* to give such an instruction. And there is no evidence here that both Jones and Mbungu intended to resolve their differences by fighting each other with deadly weapons. Indeed, Mbungu testified that he feared for his life and

15

fired in self-defense, not that he wanted to fight. Therefore, there was no error in rejecting the request for a mutual combat instruction. See *Tepanca v. State*, 297 Ga. 47, 48, 50 (2015) (no error in denying request for instruction on mutual combat where the defendant claimed that he did not want to fight the victim but shot the victim in self-defense after he thought he saw the victim reaching for something). See also *Berrian v. State*, 297 Ga. 740, 742–43 (2015) (distinguishing *Carreker* and concluding that there was no plain error where the evidence showed that the defendant and the victim taunted one another before the defendant shot the victim; "The scenario described by appellant supports an instruction on self-defense, which the trial court gave, but not a mutual combat charge."); *Carruth*, 290 Ga. at 348–49 (concluding that there was no plain error in failure to charge on mutual combat, as such a charge "was not adjusted to the evidence" where defendant claimed that victim approached him and initiated a fight, pulling out a knife, while another witness claimed that the defendant attacked the victim).

*Judgment affirmed. All the Justices concur.*